## UNITED STATES v. STARKEY.

No. 16029.

District Court, E. D. Illinois.

Oct. 23, 1943.

Ray M. Foreman, U. S. Atty., of Danville, Ill., for plaintiff.

W. M. Acton, of Danville, Ill., for defendant.

LINDLEY, District Judge.

Defendant is charged with violation of the statute and the regulations promulgated in pursuance thereof, forbidding shipping in Interstate Commerce hogs afflicted with cholera or other contagious, infectious or communicable diseases. Title 21, Section 115 U.S.C.A. forbids the shipping of animals so diseased, and Section 122 fixes punishment for violation. Regulation 6, Section 1, Par. 2, B.A.I. Order 309 (9 CFR 76.1), provides similarly that such hogs shall not move in Commerce. No question is presented as to the validity of the charge of violation of the regulation; it is valid. United States v. Pennsylvania Co., D.C., 235 F. 961.

The vendor of the pigs, a farmer, having employed a veterinarian to examine the animals, weighing about 110 pounds each, being advised that they had fever, and having learned, from a post-mortem examination of one of them by the veterinarian, that they were not well and might have cholera or some other disease, took sixteen of his nineteen pigs to market, retaining two, which afterwards died. Defendant's buyer purchased the pigs. Defendant examined them before the deal was completed. He was advised that they had fever. He saw that the hogs were not in good marketable condition, as they were young, unfattened and thin, and knew that the price paid for them was much below the normal market prices of market-ready hogs. The pigs were immediately taken by truck to Indianapolis and, upon examination the next morning, most of them were found to be afflicted with cholera.

Defendant contends that there is no proof that he knowingly transported the diseased hogs. The word "knowingly" in a criminal statute commonly means that state of mind wherein the person charged is in possession of facts under which he is aware he can not lawfully do the act with which he is charged. State v. Smith, 119 Tenn. 521, 105 S.W. 68, 69. Following this reasoning, it has been held repeatedly that proof of knowledge of facts and circumstances which, if followed up, would lead to such knowledge as would put a man of ordinary prudence or exercising ordinary care on his guard and would cause such a man to believe a fact, will justify a finding of actual knowledge. Such was the ruling principle of decisions where the charges were "knowingly" marrying the wife of another, in Brooks v. State, 74 Ark. 58, 84 S.W. 1033, 1035; "knowingly" selling intoxicating liquor to a minor, in State v. Constatine, 43 Wash. 102, 86 P. 384, 385, 117 Am.St.Rep. 1043, and State v. McCormick, 56 Wash. 469, 105 P. 1037; "knowingly" delivering liquor in dry territory, American Express Co. v. Commonwealth, 171 Ky. 1, 186 S.W. 887, 890; "knowingly" purchasing certain property from a soldier, United States v. Koplik, C.C., 155 F. 919, 922; "knowingly" receiving stolen property, State v. Kosky, 191 Mo. 1, 90 S.W. 454; People v. Tantenella, 212 Mich. 614, 180 N.W. 474, 476; State v. Perkins, 181 La. 997, 160 So. 789; and in a suit holding a hotel keeper for money lost at gaming conducted with the "knowledge" of such owner, Kemp v. Hammond Hotels, 226 Mass. 409, 115 N.E. 572, 574. The Supreme Court of Illinois has lately said in this respect in People v. Lipiano, 358 Ill. 475, 193 N.E. 458, 459: "Guilty knowledge may be established by proof of circumstances which would induce belief in a reasonable mind that property had been stolen and the receipt of such property by the accused without inquiry as to its source of the title of the one from whom it was received." To the same effect is People v. Grove, 284 Ill. 429, 120 N.E. 277.

At the time defendant purchased the pigs, he knew that they were not fattened for market but, rather, immature pigs or shoats, as he said, of "inferior" character, and paid for them much less than the market price for hogs in marketable condition. He knew that the animals had been examined by a veterinarian who had reported that they had fever, that is, more than normal temperature, but that they could be slaughtered. This veterinarian was an inspector at defendant's plant, yet defendant made no inquiry of him. He looked at the pigs and apparently knew that some question existed as to their physical condition, for he said they looked good to him and he would not be afraid to put them on his own farm. The hogs, with certain others, were loaded the same night and taken to Indianapolis where veterinarian inspectors found that they had cholera. If defendant had inquired of the veterinarian he would have found also that one of the pigs had been killed on the seller's farm and a post-mortem examination made. What the veterinarian, who is now far afield in the United States military service, would have told defendant, as to the nature of the disease, we do not know. We have only the testimony of the seller that the veterinarian's report of the post-mortem was that the hogs were afflicted somehow; that they might have cholera or something else of infectious character. This last fact, apparently, was not disclosed by the seller to the purchaser, but we must assume that if the veterinarian, a reputable professional man, had been questioned he would have disclosed at least as much as the owner now admits, and that defendant would have learned from him that there was grave question as to whether the hogs had cholera.

Thus the circumstances, it seems to me, point irresistably to the conclusion that if defendant, dealing in hogs and knowing of the prohibition of shipping cholera hogs, had exercised the reasonable care of a reasonably prudent dealer, as he was bound to do, he would have discovered the cholera and would not have shipped the pigs. He closed his eyes to obvious sources of information, ignoring results of inquiries readily accessible with regard to immature pigs not fattened for market which he was advised were afflicted in some way. I conclude, therefore, that his willful failure to pursue inquiries, his actual knowledge and what he would have discovered, point irrefutably to the ultimate fact that he is guilty of knowingly shipping in Interstate Commerce hogs afflicted with cholera.